(27 Misc. Rep. 572.)

### In re AMERICAN BANK-NOTE CO.

(Supreme Court, Special Term, Albany County. May, 1899.)

PUBLIC PRINTING—ENGRAVING.

Laws 1892, c. 683, § 72, requiring public "printing" to be done in a certain manner, and the work "performed in the same style of type, paper and execution as heretofore," does not include "engraving" or printing from engraved plates, and the superintendent of public works has authority, under the "Navigation Act" (Laws 1897, c. 592), to have the licenses required by that act engraved.

Application by the American Bank-Note Company for a writ of mandamus against William J. Morgan, comptroller. Writ granted.

Isaac L. Miller, for relator.
Gilbert D. B. Hasbrouck, Dep. Atty. Gen., for respondent.

CHASE, J. By chapter 592 of the Laws of 1897, known as the "Navigation Law," provision was made for the appointment of two inspectors, who were charged with the duty of annually inspecting the hulls and testing the boilers of steam vessels, and also of examining persons employed as masters, pilots, and engineers. Said act made it the duty of such inspectors to furnish certificates setting forth the age of the vessel and the other details required by said act, and also it made it their duty to issue licenses to masters, pilots, and engineers who passed the examination required to be made by the said inspectors. The legislature at the same session passed an appropriation for salaries and expenses of such inspectors. The act also provided that the superintendent of public works should superintend the administration of the provisions of the act. On the 16th day of September, 1897, the superintendent of public works, claiming to act in pursuance of the navigation law, sent to the relator an order for engraving and furnishing the licenses required by said act. Said order was addressed to the relator, and stated:

"You will please prepare engravings in accordance with approved model, and furnish the following New York state steamboat inspectors' licenses."

. Then followed a statement of the licenses required, and a further statement that the price would be $880, and that the same would be paid upon the completion of the work. In pursuance of such order, the relator prepared the engravings, and delivered the licenses to the superintendent of public works at Albany, and they were accepted ·by the superintendent, and used by the inspectors, as provided by the navigation act. Thereafter a bill was rendered to the superintendent of public works, verified, as required ·by the statutes of this state. The bill was duly approved by the superintendent of public works, and presented to the comptroller of the state for payment. The comptroller declined to pay the bill for the alleged reason that the state had a contract, pursuant to chapter 683 of the Laws of 1892, with the Brandow Printing Company, by the terms of which contract the Brandow Printing Company is entitled to furnish all printing, engraving, etc., that the various departments of the state might need.

The only qestion for determination is whether the superintendent of public works exceeded his authority in giving the order to the relator, instead of giving the same to the Brandow Printing Company.

Chapter 683, § 72, of the Laws of 1892, known as the "Executive Law," provides:

"The public printing payable by the state other than legislative printing shall be done as follows: * * * The work to be performed in the same style of type, paper and execution as heretofore. * * *"

.The executive law provides that the secretary of state and comptroller shall advertise for sealed proposals for such printing, and that a contract for the same for two years shall be let to the lowest bidder in the manner provided by said act. On the 24th day of September, 1896, the secretary of state and comptroller, pursuant to advertisement, as provided by the executive law, entered into a contract with the Brandow Printing Company for two years from the 20th day of January, 1897. This contract provides:

"It is expressly understood and agreed by and on the part of the said party of the first part that all printing and other work required by said act to be done by contract for the state officers above specified, their several offices and departments, shall be given to, and ordered of and from, the said party of the second part during the continuance of this agreement or contract."

Attached· to said contract is the proposal of the Brandow Printing Company, marked "B," but said proposal does not in any way refer to, or include engravings of any kind or printing from, engraved plates. The contract, however, contains the following provision:

"All lithograph printing not specified in proposal B, and all steel and copper plate printing, and all blank books, shall be charged for at the lowest rates current in New York or Albany."

The word "engrave" or "engraving" is not found in the executive law, and engraving is in no way referred to by that act. It speaks of "printing," evidently intending to use the word with its ordinary and commonly accepted meaning. The only language in the act in any way tending to show the intention of the legislature in using the word "printing" is the following: "The work to be performed in the same style of type, paper and execution as heretofore." "Printing" is

defined by Webster to be "the act, art, or practice of impressing letters, characters, or figures on paper, cloth, or other material." "Engraving" is defined by Webster to be "the act or art of producing upon hard material incised or raised patterns, characters, lines, and the like; especially, the art of producing such lines, etc., in the surface of metal plates or blocks of wood. * * * An impression from an engraved plate, block of wood, or other material; a print." In the Encyclopedia Britannica it is said "that the terms 'engraving' and 'printing' are by no means identical, and should never be considered as such." The distinction between "printing" and "engraving" is recognized, not only by lexicographers, but is frequently recognized in acts of congress and in acts of the legislature of this state, where "engraving" and "printing" are separately and distinctly referred to and provided for. The distinction is recognized in the ordinary use of the words. Except for the executive law, it is conceded that the superintendent of public works would have been authorized to enter into the contract with the relator. No good purpose is served by holding engraving to be included within the provisions of the executive law. The secretary of state and comptroller did not include engraving of any kind or printing from engraved plates in the schedule upon which they called for competitive bidding. The statement in the contract, to the effect that the contractor should be paid for engravings at the lowest rate in New York or Albany, was probably intended to cover such incidental impressions from engraved plates as would be required in the printing of manuals, etc., and was not intended to include in the contract engraving requiring skilled work, where the impressions therefrom formed a very insignificant part of the contract.

The contention of the comptroller ought not to prevail, unless the work performed by the relator was fairly within the contemplation of the legislature in passing the executive law. While the object to be attained by the contract with the relator was the furnishing of the licenses, yet the work to be performed by the relator consisted almost wholly of the preparation of the plates themselves, and the taking of impressions from the engraved plate when complete was a very inconsiderable portion of the contract. The mere fact that the licenses were finally impressed upon a plate when prepared is not sufficient to require the court to give the language of the executive law any other than its ordinary meaning, and a mandamus should issue as demanded by the relator.